IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **HUMBERTO TINOCO, CESAR MENDEZ, JOSE MAURICIO, RICARDO MORALES, APOLINAR RODRIGUEZ**, and **ANASTACIO PEREZ**, on behalf of themselves and all other employees similarly situated, known and unknown,<br><br>    Plaintiffs,<br>v.<br><br>**OCTAVIO TAPIA**, individually, and **AMERICA AUTO SERVICE, INC.**, an Illinois corporation,<br><br>    Defendants. | No. 08 CV 1365<br><br>Judge Amy J. St. Eve<br>Magistrate Judge Nan R. Nolan |

**MOTION TO STRIKE DEFENDANTS'
FIRST AND THIRD AFFIRMATIVE DEFENSES**

The plaintiffs, HUMBERTO TINOCO, CESAR MENDEZ, JOSE MAURICIO, RICARDO MORALES, APOLINAR RODRIGUEZ, and ANASTACIO PEREZ ("Plaintiffs"), by and through their attorneys of record, and pursuant to FRCP 12(f), move this Court to strike the first and third affirmative defenses of the defendants, OCTAVIO TAPIA, and AMERICA AUTO SERVICE, INC. ("Defendants"). In support thereof, Plaintiffs state as follows:

**I. INTRODUCTION**

The FLSA clearly mandates the payment of 1.5 times an employee's regular hourly rate, not 1.5 times the minimum wage. It follows that Defendants' first affirmative defense, that Plaintiffs were paid overtime compensation at a rate higher than 1.5 times the minimum wage, is irrelevant and should be stricken. Plaintiffs' citizenship

status is also irrelevant under the rationale set forth in *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002) and *Del Rey Tortilleria, Inc. v. NLRB*, 976 F.2d 1115, 1122 n.7 (7th Cir. 1992). Citizenship status has no effect on the ability to recover unpaid wages for work that has already been performed – as opposed to "back pay" or "front pay" for work that might have been performed, but for some act of a defendant. Therefore, Defendants' third affirmative defense, that Plaintiffs could have been undocumented workers, should be stricken.

Plaintiffs brought this action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Additionally, they brought supplemental claims under analogous Illinois Law: the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL"), the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.*, and the Attorneys' Fees in Wage Actions Act ("AFWAA"), 705 ILCS 225 *et seq.* The rights and remedies set forth in these Illinois statutes are similar and analogous to those that Congress set forth in the FLSA. *See generally*, *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2001 U.S. Dist. LEXIS 18370, 13, 17, 21 (pointing out that the legislative intent underpinning the FLSA and Illinois's wage and hour legislation is analogous). Plaintiffs allege that Defendants failed to pay them proper overtime compensation for numerous workweeks in which they worked in excess of 40 hours.

Defendants filed their Answer and Affirmative Defenses on May 12, 2008, in which they raised three affirmative defenses: 1) "The Plaintiffs suffered no damages because their weekly wages exceeded the minimum wage for the first 40 hours of work plus 1.5 times the minimum wage for hours in excess of that;" 2) "The Defendants at all times acted in good faith towards the Plaintiffs and with the belief that they were in

compliance with the law;" and, 3) "The Plaintiffs have no right to seek recovery under any of the Acts cited by Plaintiffs in their Complaint because one or more of them are illegal aliens." Aff. Def. ¶¶ 1-3 [Doc. 19]. A copy of Defendants' Answer and Affirmative Defenses is incorporated herein by reference and attached as **Exhibit A**. For the reasons stated above, Defendants' first and third affirmative defenses should be stricken.

## II. LEGAL STANDARD

FRCP 12(f) provides that a court may order stricken from any pleading any insufficient defense. While courts "generally disfavor motions to strike affirmative defenses . . . , a motion to strike can be a useful means of removing unnecessary clutter." *Chronister v. Superior Air/Ground Ambulance Serv.*, 2005 U.S. Dist. LEXIS 27252 at 5 (N.D. Ill.) (citing *Heller Fin. Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1295 (7th Cir. 1989)) (additional citations and internal quotation marks omitted). The Northern District of Illinois has "followed a three-part test for examining affirmative defenses subject to a motion to strike, requiring that: (1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge." *Id.* at 5-6 (citing *Yash Raj Films (USA) Inc. v. Atl. Video*, 2004 U.S. Dist. LEXIS 9739 at 2 (N.D. Ill.)). A matter will not withstand a 12(b)(6) challenge if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Duever v. Jackson*, 2005 U.S. Dist. LEXIS 23337, 5 (N.D. Ill. 2005) (quoting *Centers v. Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (additional citation omitted)).

Also relevant with regard to Plaintiffs' supplemental claims, "when a federal court is applying state law, 'the legal and factual sufficiency of an affirmative defense is examined with reference to state law.'" *Lopez v. Autoserve*, 2005 U.S. Dist. LEXIS 29161, 6 (quoting *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1400 (7th Cir. 1991).

**ARGUMENT**

**A.**     **The FLSA mandates the payment of 1.5 times an employee's regular hourly rate for overtime compensation, not 1.5 times the minimum wage.**

For their first affirmative defense, Defendants allege that "The Plaintiffs suffered no damages because their weekly wages exceeded the minimum wage for the first 40 hours of work plus 1.5 times the minimum wage for hours in excess of that." Aff. Def. ¶ 1 [Doc. 19]. However, the FLSA does not simply require employers to pay 1.5 times the minimum wage, but rather, requires them to pay 1.5 times an employee's regular hourly rate. Quite simply, employers must pay an employees overtime compensation "at a rate not less than one and one-half times the *regular rate* at which [they are] employed." 29 U.S.C. 207(a)(1) (emphasis added).

The Code of Federal Regulations defines an employee's regular hourly rate as "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed – an 'actual fact.'" 29 C.F.R. 778.108 (quoting *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945)). An employee's regular hourly rate is determined by dividing his total remuneration for employment . . . [exclusive of overtime] . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." *Id*. The maximum hours standard used to calculate regular rate is 40 hours in a workweek. *Id*.

4

Under the FLSA, "'the regular rate by its very nature must reflect all payment which the parties have agreed shall be received regularly during the work week, exclusive of overtime payments.'" *Laboy v. Alex Displays, Inc.*, 2003 U.S. Dist. LEXIS 8638 (N.D. Ill. 2003) (quoting *Walling*, 325 U.S. 419 at 424). An employee's regular hourly rate is clearly something different than the minimum wage. If the two were one and the same, there would be no need for a separate section in the Code of Federal Regulations – not to mention a body of case law – on the subject of "regular rate."

Whether or not Defendants paid Plaintiffs more than 1.5 times the minimum wage is immaterial. As indicated above, what matters is whether they paid Plaintiffs 1.5 times the regular rate at which Plaintiffs were employed. Defendants can prove no set of facts that would entitle them to raise a defense based on the payment of 1.5 times the minimum wage. Accordingly, Defendants' first affirmative defense fails to satisfy the third prong of the Northern District's test articulated above, unnecessarily clutters the case and should be stricken.

### B. Because Plaintiffs seek to recover unpaid wages for work they have *already performed*, their citizenship status is irrelevant.

For their third affirmative defense, Defendants allege that "The Plaintiffs have no right to seek recovery under any of the Acts cited by Plaintiffs in their Complaint because one or more of them are illegal aliens." Aff. Def. ¶ 3 [Doc. 19]. Plaintiffs' citizenship status is irrelevant, however, because they seek to recover unpaid wages for work they have *already performed*. Plaintiffs do not seek "back pay," "front-pay" or other relief that would require them to mitigate damages.

In *Cortez v. Medina's Landscaping*, the defendants filed a motion to compel discovery regarding the plaintiffs' citizenship status, which was premised on their

5

argument that the FLSA does not protect undocumented aliens. 2002 U.S. Dist. LEXIS 18831, 2 (N.D. Ill). They argued that if the plaintiffs were undocumented, it would have been illegal for them to mitigate damages – as would be required for an award of "back pay." *Id*. The motion to compel was denied. *Id*. at 3. Just like Defendants in the instant case, the *Cortez* defendants overlooked the key distinction between "back pay" and unpaid wages for work that has already been performed. The importance of this distinction was clearly identified in the seminal case, *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002).

*Cortez* noted that "the Seventh Circuit, in a decision anticipating the *Hoffman* holding, has expressly distinguished back pay for labor 'not performed' and unpaid wages for work 'actually performed.'" 2002 U.S. Dist. LEXIS 18831 at 2. (quoting *Del Rey Tortilleria, Inc. v. NLRB*, 976 F.2d 1115, 1122 n.7 (7th Cir. 1992)). *Hoffman Plastics* "does not hold that an undocumented alien is barred from recovering unpaid wages for work actually performed." *Id*. at 2-3 (citing *Singh v. Jutla*, 214 F. Supp. 2d 1056, 1060 (N.D. Cal. 2002); *Zeng Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 192 (S.D.N.Y. 2002); *Flores v. Albertsons, Inc.*, 2002 U.S. Dist. LEXIS 6171, at 18-20 (C.D. Cal. Apr. 9, 2002); *Topo v. Dhir*, 210 F.R.D. 76 (S.D.N.Y. 2002).). A big part of the rationale is that, when an employer violates the FLSA or the IMWL, the result is not only an injury to individual employees who are directly affected, but also an injury to the public as a whole. As *Ladegaard* said, the rights created by the FLSA and the IMWL are for the "benefit of the public at large rather than solely for the private benefit of individuals." 2001 U.S. Dist. LEXIS 18370 at 20 (citations omitted) (treating with this quote the IMWL and the IWPCA in particular). Just as the fact that the Secretary of

Labor may enforce the FLSA[1] shows Congress's concern for the public as a whole, "the fact that both the IMWL and IWPCA authorize the Director of the Illinois Department of Labor to enforce actions under their respective statutes and to expend State resources to enforce the statutes 'expresses the legislature's intent to benefit the public generally.'" *Ladegaard*, 2001 U.S. Dist. LEXIS 18370 at 20,

If employers were allowed to pay any employee (documented or not) less than what is mandated by the FLSA and IMWL, those statutes would be eviscerated in that the *de facto* wage rates in the market would be depressed. This is a prime reason for the distinction between "back pay" and unpaid wages identified by *Hoffman* and *Del Rey*. Thus, regardless of their citizenship status, Plaintiffs are entitled to recover unpaid wages for work they have already performed.

Under the rationale of *Hoffman* and *Del Rey*, Defendants can prove no set of facts that would entitle them to raise a defense to the recovery of wages, for work already performed, which is based on Plaintiffs' citizenship status. Accordingly, Defendants' third affirmative defense fails to satisfy the third prong of the Northern District's test articulated above. Because Plaintiffs' citizenship status is irrelevant, the Defendants' third affirmative defense constitutes "unnecessary clutter" and should be stricken.

---

[1] "The Secretary may bring an action in any court of competent jurisdiction to recover the amount of the unpaid minimum wages or overtime compensation and an equal amount as liquidated damages." 29 USCS § 216.

**C.     Under the *Erie* doctrine, the arguments set forth above are equally applicable to the plaintiffs' supplemental claims.**

Although "*Erie* questions arise most frequently in diversity cases, the Supreme Court has made clear that the doctrine applies equally to state law claims [brought under] supplemental jurisdiction." *Houben v. Telular Corp.*, 309 F.3d 1028, 1032 (7th Cir. 2002). When a federal court applies state law, "the legal and factual sufficiency of an affirmative defense is examined with reference to state law." *Lopez*, 2005 U.S. Dist. LEXIS 29161 at 6 (citation and internal quotation marks omitted).

Because Illinois law is in sync with federal law regarding the rationale in *Hoffman* and *Del Rey*, and regarding an employee's "regular rate," the arguments set forth in sections "A" and "B" above are equally applicable to the question of whether the defendants have sufficiently pleaded affirmative defenses to Plaintiff's supplemental claims. As *Ladegaard* notes, the "FLSA is substantially similar to the IMWL in requiring a minimum wage and maximum hours." 2001 U.S. Dist. LEXIS 18370 at 13. Further, *Abarca v. Manheim Servs. Corp.* noted that, with regard to a certain exception in the calculation of regular rate for purposes of overtime compensation, the analysis applicable to IMWL claims is the same as the analysis applicable to FLSA claims. 2007 U.S. Dist. LEXIS 4656, 14 n. 2 (N.D. Ill. 2007) (citing *Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993)); *See also Lance v. Scotts Co.*, 2005 U.S. Dist. LEXIS 14949, 10 n. 2 (N.D. Ill. 2005). It follows that if the same analysis can be applied to an *exception* in the calculation of regular rate, regular rate itself must be the same in the FLSA and the IMWL.

Finally, not only is the legislative policy section of the IMWL is "strikingly similar to the language found in the 'Congressional finding and declaration of policy'

section of the [FLSA, 29 U.S.C. § 202(a), n5], but the purpose of the IMWL as set forth by Illinois courts is similar to that of the FLSA." *Ladegaard*, 2001 U.S. Dist. LEXIS 18370 at 17 (citations omitted). Just like "the United States Supreme Court's recognition [in *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945)] that the FLSA embodies a public right, Illinois courts have recognized that both the IMWL and the IWPCA involve public rights." *Ladegaard*, 2001 U.S. Dist. LEXIS 18370 at 20. Thus, the rationale in *Hoffman* and *Del Rey* is equally applicable to Plaintiffs' federal and state law claims. Because Illinois law is in sync with federal law the arguments set forth in sections "A" and "B" above are equally applicable to the question of whether the defendants have sufficiently pleaded affirmative defenses to Plaintiffs' supplemental claims.[2]

### III. CONCLUSION

The FLSA clearly mandates the payment of 1.5 times an employee's regular hourly rate, not 1.5 times the minimum wage. Accordingly, Defendants' first affirmative defense, that Plaintiffs were paid overtime compensation at a rate higher than 1.5 times the minimum wage, is irrelevant and should be stricken. Additionally, citizenship status has no effect on the ability to recover unpaid wages for work that has *already been performed* – as opposed to "back pay" or "front pay" for work that might have been performed, but for some act of a defendant. Therefore, Defendants' third affirmative

---

[2] The IWPCA deals with the timing of payment, and with the payment of wages that are due under employment contracts. *See Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068, 1074 (N.D. Ill. 2005). The AFWAA is a fee shifting provision that makes Illinois's wage and hour laws, when taken as a whole, substantially equivalent to the FLSA. With regard to Defendants' first affirmative defense (regular rate versus minimum wage), the AFWAA does not come to bear and the IWPCA only makes Plaintiffs' argument stronger – in that under the IWPCA, Plaintiff's "regular rate" would be set by the agreement of the parties and would not be limited to the minimum wage. With regard to Defendants' third affirmative defense (undocumented workers), nothing in the IWPCA or the AFWAA would require Plaintiffs to mitigate damages – the potential illegality of which is the basis of any argument that undocumented workers cannot recover "back pay" or "front pay" – and therefore do not change the analyses in sections "A" and "B" above.

defense, that Plaintiffs could have been undocumented workers, is also irrelevant and should be stricken.

WHEREFORE, Plaintiffs pray that this Court will strike Defendants' first and third affirmative defenses with prejudice.

| | |
|---|---|
| Roy P. Amatore, Esq.<br>Paul Luka, Esq.<br>AMATORE & ASSOCIATES, P.C.<br>120 S. State Street · Suite 400<br>Chicago, IL 60603<br>312.236.9825 (tel.)<br>312.236.9826 (fax) | Respectfully submitted,<br><br>  /s/Paul Luka　　　　　　<br>PAUL LUKA |

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HUMBERTO TINOCO, CESAR MENDEZ, JOSE MAURICIO, RICARDO MORALES, APOLINAR RODRIGUEZ, and ANASTACIO PEREZ, on behalf of themselves and all other employees similarly situated, known and unknown,<br><br>Plaintiffs,<br><br>v.<br><br>OCTAVIO TAPIA, individually, and AMERICA AUTO SERVICE, INC., an Illinois corporation,<br><br>Defendants. | No. 08 C 1365<br><br>JUDGE AMY J. ST. EVE |

### ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES

Now Come the Defendants, OCTAVIO TAPIA, individually, and AMERICA AUTO SERVICE, INC., an Illinois corporation, by and through their attorneys, KELLY & KING, P.C. and answer the Plaintiffs' Complaint as follows:

1. The Defendants make no response to the first sentence of Paragraph 1 of Plaintiffs' Complaint as to whether the case arises under the Fair Labor Standards Act because Plaintiffs' assertion is a legal conclusion. The Defendants admit that Plaintiffs worked in excess of 40 hours per week but deny that they refused to pay Plaintiffs' time-and-a-half overtime compensation.

2. The Defendants make no response to Paragraph 2 of Plaintiffs' Complaint as it does not call for a response.

3.  Defendants have insufficient knowledge as to the allegations contained in Paragraph 3 of Plaintiffs' Complaint and, therefore, demand strict proof thereof.

4.  Defendants admit the allegations contained in Paragraph 4 of Plaintiffs' Complaint.

5.  Defendants admit the allegations contained in Paragraph 5 of Plaintiffs' Complaint

6.  Defendants admit the allegations contained in Paragraph 6 of Plaintiffs' Complaint

7.  Defendants admit the allegations contained in Paragraph 7 of Plaintiffs' Complaint

8.  Defendants admit the allegations contained in Paragraph 8 of Plaintiffs' Complaint

9.  Defendants have insufficient knowledge as to the allegations contained in Paragraph 9 of Plaintiffs' Complaint and, therefore, demand strict proof thereof.

10. Defendants admit the allegations contained in Paragraph 10 of Plaintiffs' Complaint.

11. Defendants deny each and every allegation contained in Paragraph 11 of Plaintiffs' Complaint.

12. Defendants have insufficient knowledge as to the allegations contained in Paragraph 12 of Plaintiffs' Complaint and, therefore, demand strict proof thereof.

13. Defendants deny joint and several liability but admit the remaining portions of Paragraph 13 of Plaintiffs' Complaint.

14. Defendants admit that the employment dates set forth in Paragraph 14 of Plaintiffs' Complaint are approximately correct but deny that all of the beginning and ending dates are exactly correct.

15. Defendants admit the allegations contained in Paragraph 15 of Plaintiffs' Complaint.

16. Defendants have insufficient knowledge as to the allegations contained in Paragraph 16 of Plaintiffs' Complaint and, therefore, demand strict proof thereof.

17. Defendants admit the allegations contained in Paragraph 17 of Plaintiffs' Complaint

18. Defendants deny they refused to pay Plaintiffs' overtime but admit the remaining portions of Paragraph 18 of Plaintiffs' Complaint.

## Count I

### (Violation of FLSA)

19. Defendants repeat and reallege their answers to Paragraphs 1 - 18 above as though each were fully set forth herein.

20. Defendants deny each and every allegation contained in Paragraph 20 of Plaintiffs' Complaint.

21. Defendants deny each and every allegation contained in Paragraph 21 of Plaintiffs' Complaint.

Wherefore, Defendants pray for Judgment in their favor and against the Plaintiffs.

## Count II

### (Violation of the IMWL)

22. Defendants repeat and reallege their answers to Paragraphs 1 - 18 above as though each were fully set forth herein.

23. Defendants deny each and every allegation contained in Paragraph 23 of Plaintiffs' Complaint.

24. Defendants deny each and every allegation contained in Paragraph 24 of Plaintiffs' Complaint.

Wherefore, Defendants pray for Judgment in their favor and against the Plaintiffs.

## Count III

### (Violation of the IWPCA/AFWAA Claim)

3

25.     Defendants repeat and reallege their answers to Paragraphs 1 - 18 above as though each were fully set forth herein.

26.     Defendants deny each and every allegation contained in Paragraph 26 of Plaintiffs' Complaint.

27.     Defendants deny each and every allegation contained in Paragraph 27 of Plaintiffs' Complaint.

28.     Defendants deny each and every allegation contained in Paragraph 28 of Plaintiffs' Complaint.

Wherefore, Defendants pray for Judgment in their favor and against the Plaintiffs.

## AFFIRMATIVE DEFENSES

For their affirmative defenses to Plaintiffs' Complaint at Law, Defendants state as follows:

1.      The Plaintiffs suffered no damages because their weekly wages exceeded the minimum wage for the first 40 hours of work plus 1.5 times the minimum wage for hours in excess of that.

2.      The Defendants at all times acted in good faith towards the Plaintiffs and with the belief that they were in compliance with the law.

3.      The Plaintiffs have no right to seek and recover under any of the Acts cited by Plaintiffs in their Complaint because one or more of them are illegal aliens.

Wherefore, Defendants pray for Judgment in their favor and against the Plaintiffs.

s/ Paul E. Kelly
One of the Attorneys for Defendants,
OCTAVIO TAPIA and AMERICA
AUTO SERVICE, INC.

4

Paul E. Kelly - Attorney No. 1437356
KELLY & KING, P.C.
20 North Clark Street, Suite 2900
Chicago, Illinois 60602
312-553-5290

## PROOF OF SERVICE

I, Paul E. Kelly, attorney for Defendants herein, certify that I have served a copy of the foregoing **ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES** to:

> Roy P. Amatore
> Paul Luka
> AMATORE & ASSOCIATES, P.C.
> 120 S. State Street, Suite 400
> Chicago, IL 60603

electronically on May 12, 2008 at or before 5:00 p.m.

s/ Paul E. Kelly